J-S79004-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| SALVATOR SCUDERI, | : | |
| Appellee | : | No. 1285 EDA 2014 |

Appeal from the PCRA Order Entered March 19, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-1010101-1994

BEFORE:    ALLEN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED MARCH 05, 2015**

The Commonwealth of Pennsylvania (the Commonwealth) appeals from the order entered on March 19, 2014, which granted the motion of Salvator Scuderi (Scuderi) for post-conviction DNA testing under Section 9543.1 of the Post Conviction Relief Act (PCRA).[1]  Upon review, we reverse.

The PCRA court summarized the underlying background of this matter as follows:

> In the afternoon of August 27, 1994, Ms. L.C., a thirty-seven year old African American woman suffering from epilepsy and schizophrenia was hitchhiking on I-95 in the Philadelphia area.  The previous night she checked herself into Presbyterian Hospital, and then checked herself out again at approximately 2:00 a.m.  As she hitchhiked, she was still wearing her hospital gown underneath her clothing.

---

[1] 42 Pa.C.S. §§ 9541-9546.

*Retired Senior Judge assigned to the Superior Court.

At some point that afternoon, [Scuderi] pulled over and offered L.C. a ride. She accepted, and they drove together for approximately one hour, making small talk, until [Scuderi] left the highway and parked near a secluded, wooded area of a dead-end street at the 2700 block of East Norris Street in Philadelphia. He removed the victim's clothes and raped her, and then pushed her from his car, retaining all of her clothing in the vehicle. He then stepped out of the car and assaulted her with a wooden stick, penetrating her rectum and vagina, and kicked her. He then drove away.

A warehouse worker saw the incident and called the police at 2:38 p.m., and Officer Michael Musial responded. He found the victim naked, confused, and bleeding. Shortly thereafter, a car drove by and the warehouse worker identified it to Officer Musial as being the one involved in the crime. Officer Musial pursued the car, but soon lost sight of it. Seconds later, another officer saw the car parked on the 800 block of Mercer Street, a few blocks from where the victim was ejected from the car. Police towed the car and traced its plate, which indicated that it was registered to [Scuderi]. The victim's clothes were found in the car.

Initially, [Scuderi] told police that he had attempted to report that his car was stolen earlier in the day, and denied any involvement in the crime. He said that he was at a doctor's appointment on South Street, miles from the crime scene, but when he came out of the doctor's office at 1:45 p.m., his car was gone. Several days later, police lured [Scuderi] by telling him that he could come to a police unit and pick up his car, which they had towed from the crime scene. When he arrived, police arrested and interrogated him, and within two hours he signed a statement drafted by Officer Nancy Radaszkiewicz in which he acknowledged having accepted oral sex from the victim and ejecting her from his car when she attempted to rob him.

The victim identified an old mug shot of [Scuderi] from a photo array while she was in the hospital, seriously injured, sedated, and, in her own words, "messed up in the head." She also identified him at trial.

PCRA Court Opinion, 5/16/2014, at 2-4 (citations and footnote omitted).

On May 15, 1995, a jury convicted Scuderi on one count of involuntary deviate sexual intercourse and one count of aggravated assault. Scuderi was sentenced to two terms of 10 to 20 years' imprisonment, to be served concurrently. Scuderi did not file a direct appeal.

Following several unsuccessful attempts at obtaining post-conviction relief, Scuderi filed the instant motion for post-conviction DNA testing under Section 9543.1 on May 7, 2013. Specifically, Scuderi sought DNA testing of the rape kit collected by the Commonwealth immediately after the crime. On November 15, 2013, the Commonwealth filed a motion to dismiss, to which Scuderi filed a response on January 6, 2014. On March 19, 2014, after oral argument, the PCRA court granted Scuderi's motion. On April 17, 2014, the Commonwealth timely filed a notice of appeal.

The Commonwealth presents the following issue for our consideration: "Did the [PCRA] court err in granting [Scuderi's] motion for post-conviction DNA testing where he did not make his motion in a timely manner, and, in any event, there is no reasonable possibility that testing would produce exculpatory evidence establishing his actual innocence?" Commonwealth's Brief at 2.

"Post[-]conviction DNA testing falls under the aegis of the [PCRA,] and thus, '[o]ur standard of review permits us to consider only whether the PCRA

court's determination is supported by the evidence of record and whether it is free from legal error.'" **Commonwealth v. Conway**, 14 A.3d 101, 108 (Pa. Super. 2011) (footnote and citation omitted) (quoting **Commonwealth v. Brooks**, 875 A.2d 1141, 1144 (Pa. Super. 2005)).

Section 9543.1 of the PCRA provides, in relevant part, as follows:

**(a) Motion.--**

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\*\*\*

**(c) Requirements.--**In any motion under subsection (a), under penalty of perjury, the applicant shall:

\*\*\*

(3) present a prima facie case demonstrating that the:

   (i)   identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

   (ii)  DNA testing of the specific evidence, assuming exculpatory results, would establish:

      (A)   the applicant's actual innocence of the offense for which the applicant was convicted;

\*\*\*

**(d) Order.--**

   (1)   Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

      (i)    requirements of subsection (c) have been met;

      (ii)   evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

      (iii)  motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay

> the execution of sentence or administration of justice.
>
> (2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:
>
>> (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1.

Here, the Commonwealth argues, *inter alia*, that the PCRA court erred in granting Scuderi's motion for post-conviction DNA testing because there is no reasonable possibility that such testing would produce exculpatory results establishing Scuderi's actual innocence for the offenses for which he was convicted. We agree.

This Court has previously observed that,

> [u]nder section 9543.1(c)(3), the petitioner is required to present a *prima facie* case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish [the] petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence. We note that

> the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence **that would establish petitioner's actual innocence.** We find no ambiguity in the standard established by the legislature with the words of this statute.
>
> The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. The statutory standard to obtain testing requires more than conjecture or speculation; it demands a prima facie case that the DNA results, if exculpatory, would establish actual innocence.

*Commonwealth v. Williams*, 35 A.3d 44, 49-50 (Pa. Super. 2011) (emphasis in original) (citations omitted) (quoting *Commonwealth v. Smith*, 889 A.2d 582, 584-86 (Pa. Super. 2005)).[2]

Here, the evidence presented against Scuderi at trial included the victim's identification of Scuderi as her attacker at a pre-trial photo array and at trial. Scuderi's car was identified as the one involved in the crime, and the victim's clothes were recovered from that car. Moreover, after

---

[2] Moreover, the "actual innocence" standard mandates that "newly discovered evidence … make it 'more likely than not that no reasonable juror would have found [an applicant] guilty beyond a reasonable doubt.' Thus, this standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if presented with the new evidence." *Conway*, 14 A.3d at 109 (quoting *Schlup v. Delo*, 513 U.S. 298, 327, 329 (1995)).

initially denying any involvement in the crime, Scuderi provided a statement to police wherein he acknowledged having accepted oral sex from the victim and ejecting her from his car when she attempted to rob him. In light of this evidence, we conclude that, even assuming the DNA testing showed the presence of another man's DNA, those results would not establish Scuderi's actual innocence for the crimes of involuntary deviate sexual intercourse and aggravated assault.[3] Such results would, at best, merely cast doubt on the Commonwealth's case by suggesting it could have been someone else; they would not exclude Scuderi as the perpetrator.

Because there is no reasonable possibility that the requested DNA testing would produce exculpatory evidence to establish petitioner's actual innocence, the PCRA court erred in granting Scuderi's motion under Section 9543.1.[4] Accordingly, we reverse the order of the PCRA court.

Order reversed.

---

[3] Scuderi was acquitted of rape.

[4] As a result of our conclusion above, we need not address the Commonwealth's timeliness argument. **See Brooks**, 875 A.2d at 1146 (declining to address the issue of whether an appellant's petitions for post-conviction DNA testing were filed in a timely manner because the Court could dispose of the case on other grounds).

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 3/5/2015